ScoEiELD, J.,*
delivered the opinion of the court:
The claimant, was appointed by the Postmaster-General a fourth-class postmaster at Ohadron, Nebr., and served as such from July 1, 1885, to January 25, 1887. At the latter date he was commissioned by the President a third-class postmaster at the same place.
From October 1,1886, to January 25, 1887, he was paid a salary at the rate of $1,000 a year. He now claims that he should have been paid at the rate of $1,600 a year. This would entitle him to $190 additional.
The claim is based upon the proviso to section 2 of the Act of March 3, 1883 (22 Stat. L., 602), and upon section 3 of the same act, which reads as follows:
“Provided, That when the compensation of any postmaster of this class shall reach $250 for four consecutive quarters each, exclusive of commissions on money-order business, and when his returns to the Auditor for four- consecutive quarters shall show him to be entitled to a compensation in excess of $250 per quarter, the Auditor shall report such fact to the Postmaster-General, who shall assign the office to its proper class and fix the salary of the postmaster as provided by section 1 of this act.
“Sec. hi. That the Postmaster-General shall make all orders relative to the salaries of postmasters, and any change made *191 in such salaries shall not take effect until the first day of the quarter next following the order, and the Auditor shall be notified of any and all changes of salaries.”
All the requirements of this proviso were found in favor of the claimant, and the Auditor so reported to the Postmaster-General. August 27, 1886, the Postmaster-General assigned this office to the third class, and fixed the salary of the postmaster at $1,600 a year from October 1, 1886.
It thus appears that this post-office was prospectively withdrawn from the fourth class and placed in the third, and the salary raised from $1,000 to $1,600 a year, to take effect on the 1st day of October following. All this was done in strict conformity to the-statute above cited.
This law and the proceedings under it seem to sustain the claimant’s contention. To avoid this conclusion the counsel for the defendants cites section 6 of the Act of July 12, 1876 (19 Stat. L, 80), as follows:
“Postmasters of the first, second, and third classes shall be appointed and may be removed by the President by and with the advice and consent of the Senate, and shall hold their offices for four years, unless sooner removed or suspended according to law; and postmasters of the fourth class shall be appointed and may be removed by the Postmaster-General.
It is contended that the Act of 1883, taken in connection with the Act of 1876, only provides a mode for transferring a fourth-class post-office to the third class and of fixing the salary to be attached thereto. All this was provided for by the then existing law. If therefore the incumbent of the office was not to be benefited, the necessity of the enactment is not apparent. Counsel for the defendants in support of his construction of the law cites Postal Eegulations, section 258, as follows:
“ The change and classification from an office of the fourth class to third class takes effect upon the assumption of the duties by a postmaster appointed and commissioned by the President, and until such postmaster takes charge the daily reports of cancellation must be kept and transcript of cancellations furnished upon which the postmaster’s compensation will be determined.
This regulation was not promulgated by the Department until 1887. Prior to November 16,1886, as appears in finding Vi, the increase in salary was allowed and paid from the date *192 of tlie new classification. Thus, the contemporaneous construction of, and practice under, the Act of 1883 was in harmony with the claimant’s present contention.
The regulation only expresses the departmental construction of the act at the time of its promulgation. While it is justly entitled to great consideration, it has not of itself the force of law. It was in consequence of this change of construction and practice in the Department that suit has been brought in this court.
While it is very certain that Congress did not by this legislation intend to change the classification of postmasters, it is not unreasonable to suppose they did intend to increase the compensation of fourth-class postmasters who “for four consecutive quarters, are shown to be entitled to a compensation in excess of $250 per quarter,” although they might not be immediately appointed to a higher grade. On the contrary, it appears to have been the chief purpose of the proviso and third section to produce that result, for it does not appear that the patrons of the office were to receive any particular advantage by the change.
Postmasters, however appointed, remain postmasters of the office, however changed in class by the increase or decrease of its revenues (1C Opinions of the Attorney-General, 18); but salaries depend upon the amount of revenue as ascertained by the Sixth Auditor in the manner prescribed by the statute.
Section 31 of the Act of March 3, 1879 (20 Stat.L., 355), provides that—
“Any person performing the duties of postmaster, by authority of the President, at any post-office where there is a vacancy for any cause, shall receive for the term for which the duty is performed the same compensation to which he would have been entitled if regularly appointed and confirmed as such postmaster.”
The pending case does not technically come within this section, but the Act of 1883 is in the same line of remedial legistion.
Judgment for claimant in the sum of $190.

 This was the last opinion delivered by Judge Scofield.